### ALFRED VIENNE *v.* M. HARRIS, JR., et al.

Where a slave has been purchased with warranty, and is afterwards sequestered while in the possession of a lessee, against whom suit is brought for his recovery, and immediate notice is given by the lessee to the vendee, who likewise gives immediate notice to the vendor, of the institution of said suit, with a request that he defend it, or furnish the vendee the necessary means for maintaining his title to the slave, and the vendor promises to defend the action himself, which he fails to do, and the suit goes by default against the lessee, if neither the vendee nor the vendor is a party to the suit, it is the fault of the latter, and as against his vendee he cannot protect himself by claiming, " that an eviction of property can only be on final judgment, where the vendor or vendee is a party to the suit, and where the title to the property is directly drawn in question."

In order to establish that a commercial partnership is not bound by the act of one of the partners, in any particular matter, it is necessary *expressly to deny his authority*, and to disclose by evidence, the nature of their commercial business.

APPEAL from the Fourth District Court of New Orleans, *Price*, J. *W. D. Hennen*, for plaintiff. *J. T. Ellison*, and *Race & Foster*, for defendant and appellant.

LAND, J. On the 5th of January, 1857, the plaintiff purchased from *M. Harris, Jr.*, a negro man, for the price of one thousand dollars in cash.

In this act of sale, *Micajah Harris, Sr.*, intervened in his capacity as member of the commercial firm of *Harris & Levi*, and declared that he obligated his said

firm to guarantee the title to the slave sold, and promised and bound said firm to reimburse unto the purchaser any and all loss that he might sustain in consequence of a defect in title, character, or by eviction, or otherwise.

The plaintiff hired the slave to *C. Johnson*, master of the steamboat Lecompte, running in the Red River and Texas trade, and the slave was sequestered on the 16th of March, 1857, in the county of Cass, in the State of Texas, at the suit of *J. Speake*, administrator of the estate of *C. M. Hunt*, on the ground of ownership and possession by the deceased at the time of her death in June, 1855.

On the return of the boat to this city, *Johnson* gave notice to the plaintiff, of the institution of the suit in Texas, and of his dispossession of the slave by virtue of the sequestration.

The plaintiff thereupon immediately gave notice to the defendant, his vendor, of the institution of the suit, the seizure of the slave, and the danger of eviction, and called upon the defendant to defend the suit, or to furnish him with the necessary means of maintaining his title to the slave.

In reply, the defendant promised to go into Texas, bond the slave, and restore him to plaintiff.

The administrator obtained a judgment for the recovery of the slave, and this suit is brought against the defendants upon their obligations of warranty for the recovery of the price paid, and hire at the rate of thirty dollars per month from the 16th of March 1857, and the further sum of one hundred and fifty dollars.

The defendants are *Micajah Harris, Jr., Micajah Harris, Sr.*, and the commercial firm of *Harris & Levi*, who filed separate answers. *Micajah Harris, Jr.*, admitted in his answer, the sale of the slave, and his sequestration in the State of Texas as alleged, and averred that he had employed an attorney at law to defend the action. This answer was adopted, and made a part of the separate answers of *Micajah Harris, Sr.*, and of the commercial firm of *Harris & Levi.* The latter, however, deny all liability on their part as a commercial firm, allege that they are engaged in business as cotton factors and commission merchants, and that the guarantee of the title of the slave was not in the scope of their partnership business.

On the trial of the cause, the defendants counsel requested the court to charge the jury as follows :

First. That an eviction of property can only be on final judgment, where the vendor or vendee is a party to the suit, and where the title to the property is directly drawn in question.

Second. That if the jury believe from the evidence, that an action of sequestration was brought on the 16th day of March, 1857, against *Johnson*, in possession of the slave *Joe. Harris*, the vendor, and *Vienne*, the vendee of said slave, being neither of them parties to said action, and that *Johnson* made default and suffered judgment, dispossessing him of said slave on the 9th day of October, 1857, the jury must find for the defendant.

The charge thus asked was refused, and the defendants took their bill of exceptions, and insist in this court, that the Judge below erred in refusing the charge.

From the transcript of the suit in Texas offered in evidence, it appears that the action for the recovery of the slave was not defended, and that the cause was tried on default by a jury, and that in pursuance of the verdict, a judgment was rendered in favor of the administrator. Nor does it appear from the transcript, that either the plaintiff or defendant ever made themselves parties to the suit.

It was in reference to this state of facts, that defendants counsel asked the

charge to the jury. We think that the charge was properly refused, under the *peculiar facts of the case.*

*Johnson*, the lessee of the slave, was sued for his recovery—he gave immediate notice to his lessor—who likewise gave immediate notice to his vendor, the defendant, *who promised to defend the action*, but failed to do so.

And, if neither the vendor nor vendee of the slave was a party to the suit, *it was the fault of the former*, and he cannot be permitted, as against his vendee, whose title and possession he was bound to defend—*to take advantage of his own neglect or laches.* The plaintiff has been evicted by a final judgment of a court of competent jurisdiction, after notice to, and refusal, on the part of his vendor to defend the action, and his right to sue on the obligations of warranty is perfect.

The commercial firm of *Harris & Levi*, do not, in their answer, *expressly deny* the *authority* of *M. Harris, Sr.*, to bind the firm in the matter of the guarantee of the title of the slave; nor does the record *disclose the nature of their commercial business*, beyond their own averment.

It is, therefore, ordered, adjudged and decreed, that the judgment be affirmed, with costs in both courts.